**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eric Joseph Natzel, ) | CIV 12-1889-PHX-SRB (MHB) |
| Petitioner, ) | **REPORT AND RECOMMENDATION** |
| vs. ) | |
| Charles L. Ryan, et al., ) | |
| Respondents. ) | |

TO THE HONORABLE SUSAN R. BOLTON, UNITED STATES DISTRICT JUDGE:

Petitioner Eric Joseph Natzel, who is confined in the Arizona State Prison Complex-Lewis, has filed a *pro se* Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 and a memorandum in support thereof (Docs. 1, 2). On April 12, 2013, Respondents filed their Answer (Doc. 12). On September 19, 2013, attorney Guy Floyd Brown filed a Notice of Appearance on behalf of Petitioner indicating that he has been retained to represent Petitioner in all further proceedings (Doc. 17). Petitioner, through counsel, filed his Reply to Respondents' Answer on November 22, 2013 (Doc. 23).

## **BACKGROUND**[1]

The Arizona Court of Appeals set forth the following facts in its Memorandum Decision affirming Petitioner's convictions and sentences on direct appeal:

> The victim of the offenses was [Petitioner]'s thirty-four month old daughter. [Petitioner]'s wife, the victim's mother ("Mother"), went to work at 1:00 p.m. on the date of the incident while [Petitioner] stayed home with the victim.

---

[1] Unless otherwise noted, the following facts are derived from the Exh.s submitted with Doc. 12 – Respondents' Answer.

> Mother called home shortly after 5:00 p.m. and spoke with [Petitioner], who was playing videogames. Eventually, Mother asked to speak to the victim. [Petitioner] replied that he did not know where the victim was and he could not find her. Because the victim had a toy box that Mother had recently seen her sit in while playing, Mother suggested that [Petitioner] look in the toy box. When [Petitioner] returned to the phone, he told Mother to come home because the victim was choking and then hung up. [Petitioner] later told law enforcement personnel he found the victim inside the toy box, face down and unresponsive. It was later determined the victim died of asphyxiation while trapped inside the toy box.
>
> The interior of the toy box measured nineteen inches long, thirteen inches wide and thirteen inches tall. Tests using the victim's body and the toy box indicated she would barely fit in the box with the lid closed. She had to be forced into a fetal position with her arms and legs curled underneath her and her head twisted forward. There was testimony it was a "very, very snug, tight fit to get her into the box," and that the victim had to be "squeezed" into the box in order to close and latch the lid. Tests conducted on the box revealed it was possible for the lid to become latched if it fell closed while the box was empty and the latches were in a specific position. If the lid became latched with the victim inside, the victim would not have been able to push the lid open.
>
> Before the incident, the victim had no injuries other than two small bruises on her shins and a slight bump on her head from where she bumped her head the previous night. At the time of her autopsy, the victim had twenty-one groups of bruises and/or abrasions representing several dozen individual injuries, the majority of which were minutes to hours old at the time of the victim's death. None of these injuries were life-threatening. Some of the victim's injuries were attributed to her struggling to get out of the toy box. But additional injuries to the victim's head and back, which were "nonaccidental," were inconsistent with injuries sustained while struggling in the box, possibly caused by the use of a blunt object or a human hand.
>
> [Petitioner] was charged with two counts of child abuse pursuant to Arizona Revised Statutes ("A.R.S.") section 13-3623(A) and (B). To prove count one, the State had to prove that in circumstances likely to produce death or serious physical injury, [Petitioner] caused the victim to suffer physical injury or, having the care or custody of the victim, caused or permitted the person or health of the victim to be injured or caused or permitted the victim to be placed in a situation where the person or health of the victim was endangered, and that he did so intentionally or knowingly. A.R.S. § 13-3623(A)(1). ... To prove count two, the State had to prove that in circumstances other than those likely to produce death or serious physical injury to the victim, [Petitioner] caused the victim to suffer physical injury or abuse or, having the care or custody of the victim, caused or permitted the person or health of the victim to be injured or caused or permitted the victim to be placed in a situation where the person or health of the victim was endangered, and that he did so intentionally or knowingly. A.R.S. § 13-3623(B)(1). ... Count one was charged as a dangerous crime against children because the victim was under the age of fifteen. See A.R.S. § 13-604.01(M)(1)(h).

(Exh. D.)

1 On February 7, 2008, Petitioner was convicted on one count each of: (1) child abuse 2 under circumstances to produce death or serious physical injury, a class felony and a 3 dangerous crime against children (Count 1); and (2) child abuse under circumstances likely 4 to cause the victim to suffer physical injury or abuse other than those likely to produce death 5 or serious physical injury, a class 4 felony and domestic violence offense (Count 2). (Exhs. 6 A, B.) On June 20, 2008, the state trial court sentenced Petitioner to an aggravated term of 7 24 years' imprisonment on Count 1, and the presumptive term of 2½ years' imprisonment 8 on Count 2. (Exh. C.) The trial court ordered that the sentences be served consecutively. (Id.)

9 Petitioner appealed, arguing that the trial court erred by: (1) imposing an aggravated 10 sentence on Count 1; (2) ordering that the sentences be served consecutively; (3) admitting 11 testimony regarding the "uncharged crime of homicide;" (4) admitting photographs of the 12 deceased victim; and (5) instructing the jury regarding the burden of proof pursuant to State 13 v. Portillo, 182 Ariz. 592, 898 P.2d 970 (1995). (Exh. D.)

14 The Arizona Court of Appeals affirmed the convictions and sentences imposed. (Id.) 15 The court held that: (1) the trial court properly imposed an aggravated sentence; (2) because 16 the two crimes involved separate acts, the imposition of consecutive sentences was proper; 17 (3) neither the "homicide" testimony nor the admission of the autopsy photographs were 18 improper; and (4) the jury was properly instructed on its burden of proof. (Id.)

19 On November 5, 2009, Petitioner filed a timely notice of post-conviction relief. (Exh. 20 E.) Thereafter, Petitioner filed a petition for post-conviction relief raising the following 21 claims: (1) trial counsel rendered ineffective assistance by, (i) "prosecuting [Petitioner]," by 22 presenting expert testimony from a witness that had previously been noticed by the state, (ii) 23 failing to request a lesser-included offense instruction on Count 1, (iii) not objecting to the 24 qualifications of the state's expert, and (iv) failing to "investigate the state's 'medical-25 opinion-only' evidence and obtain readily available defense experts to testify [on his 26 behalf];" and (2) he was denied a fair trial "when he was convicted upon tainted expert 27 testimony that had no scientific support," as shown by newly presented evidence. (Exh. F.)

28

1    In response, the state argued that: (1) although the defense expert witness had indeed
2    been originally noticed as a witness for the state, her exculpatory testimony ultimately
3    supported Petitioner's innocence and thus, the decision to call her as a defense witness
4    constituted reasonable trial strategy; (2) any failure to challenge the qualifications of the state
5    expert did not constitute deficient performance because any such challenge would have been
6    futile; (3) the decision not to request a lesser-included jury instruction was reasonable trial
7    strategy when considering Petitioner's all-or-nothing defense; (4) any additional expert
8    testimony would have been duplicative of the evidence presented at trial; and (5) Petitioner's
9    alleged new evidence was immaterial because, (i) its purpose was solely to impeach the
10   state's expert witness, an insufficient basis on which to overturn the verdict, (ii) it was
11   cumulative and thus, would not have changed the outcome of the trial, and (iii) it did not
12   constitute newly discovered because it could have been discovered during trial with the
13   exercise of due diligence. (Exh. G.)

14   On April 21, 2011, the state trial court dismissed the petition for post-conviction relief
15   "[f]or the reasons stated in the State's written response." (Exh. H.)

16   Petitioner thereafter filed a petition for review in the Arizona Court of Appeals
17   arguing that the state post-conviction court erred by: (1) failing to review Petitioner's reply
18   brief; (2) dismissing Petitioner's lesser-included jury instruction claim; (3) applying a
19   repealed version of a state court rule; and (4) dismissing Petitioner's ineffective assistance
20   and new evidence claims. (Exh. I.)

21   On May 2, 2012, the Arizona Court of Appeals denied relief. (Exh. J.) The court
22   reasoned that: (1) it could be inferred from the record that the trial court properly reviewed
23   Petitioner's reply prior to issuing its decision; (2) the trial court properly considered and
24   rejected Petitioner's ineffective assistance claim regarding the failure to request a lesser-
25   included instruction; (3) nothing in the record supported a finding that the trial court relied
26   on an outdated standard in denying Petitioner's claims; and (4) Petitioner had failed to meet
27   his burden of establishing that the trial court abused its discretion in denying relief. (Id.)

28

1    On September 7, 2012, Petitioner filed a *pro se* Petition for Writ of Habeas Corpus
2 and memorandum in support thereof. (Docs. 1, 2.) Petitioner raises the following grounds for
3 relief: (1) trial counsel rendered ineffective assistance by presenting expert testimony from
4 a witness that had been previously noticed by the State; (2) trial counsel rendered ineffective
5 assistance by failing to request a lesser-included offense instruction regarding Count 1; (3)
6 the trial court erred in failing to preclude State expert testimony pursuant to Rule 702 of the
7 Arizona Rules of Evidence; (4) Petitioner was denied a fair trial because the State experts'
8 medical opinions were unreliable. (Id.)

9    Respondents filed their Answer on April 12, 2013, and Petitioner, through counsel,
10 filed a Reply to Respondents' Answer on November 22, 2013. (Docs. 12, 23).

**DISCUSSION**

12   In their Answer, Respondents contend that: Ground Three fails to state a basis for
13 federal habeas relief or, alternatively, is procedurally defaulted because Petitioner did not
14 present the claim to the state courts; Ground Two is procedurally defaulted because the
15 Arizona Court of Appeals applied a procedural bar in dismissing the claim; and Grounds
16 One, Two, and Four fail on the merits. (Doc. 12.) In his Reply, Petitioner withdraws his
17 claims asserted in Grounds One, Three, and Four of his habeas petition. (Doc. 23.) Thus,
18 having reviewed the record and the arguments of the parties set forth in their briefing, the
19 Court will recommend that Grounds One, Three, and Four of Petitioner's habeas petition be
20 denied and dismissed, and will address the merits of Ground Two below.

21   Pursuant to the AEDPA[2], a federal court "shall not" grant habeas relief with respect
22 to "any claim that was adjudicated on the merits in State court proceedings" unless the state
23 court decision was (1) contrary to, or an unreasonable application of, clearly established
24 federal law as determined by the United States Supreme Court; or (2) based on an
25 unreasonable determination of the facts in light of the evidence presented in the state court
26 proceeding. See 28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 412-13 (2000)

---

[2] Antiterrorism and Effective Death Penalty Act of 1996.

- 5 -

(O'Connor, J., concurring and delivering the opinion of the Court as to the AEDPA standard of review). "When applying these standards, the federal court should review the 'last reasoned decision' by a state court ... ." Robinson, 360 F.3d at 1055.

A state court's decision is "contrary to" clearly established precedent if (1) "the state court applies a rule that contradicts the governing law set forth in [Supreme Court] cases," or (2) "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [its] precedent." Williams, 529 U.S. at 404-05. "A state court's decision can involve an 'unreasonable application' of Federal law if it either 1) correctly identifies the governing rule but then applies it to a new set of facts in a way that is objectively unreasonable, or 2) extends or fails to extend a clearly established legal principle to a new context in a way that is objectively unreasonable." Hernandez v. Small, 282 F.3d 1132, 1142 (9th Cir. 2002).

In Ground Two, Petitioner claims that his trial counsel rendered ineffective assistance by failing to request a lesser-included offense instruction as to Count 1. (Docs. 1, 2.) Petitioner states that "if evidence was put forth to show that the toy box entrapment and asphyxiation was not done intentionally, but instead the result of reckless or negligent conduct ... then the jury should have been instructed under A.R.S. § 13-3623(A)(2)(3)." (Doc. 2.) Petitioner continues stating that "failing to investigate this noise from the daughters bedroom, could be subjectively interpreted by the jury as either reckless (A)(2)(id) or negligent (A)(3) supervision ... ." (Doc. 2.) Further, in his reply, Petitioner contends, "[t]hese facts clearly entitle Petitioner to a new trial, because the deliberate election by an attorney to engage — either mistakenly or intentionally — in actions that violate and contradict the established goals of the representation constitute ineffective assistance of counsel. That is, deficient performance and prejudice, which is demonstrated by Petitioner receiving a greater sentence than possible under the lesser included negligent/reckless offense." (Doc. 23.)

The two-prong test for establishing ineffective assistance of counsel was established by the Supreme Court in Strickland v. Washington, 466 U.S. 668 (1984). In order to prevail on an ineffective assistance claim, a convicted defendant must show (1) that counsel's

1  representation fell below an objective standard of reasonableness, and (2) that there is a
2  reasonable probability that, but for counsel's unprofessional errors, the result of the
3  proceeding would have been different. See id. at 687-88.

4  Regarding the performance prong, a reviewing court engages a strong presumption
5  that counsel rendered adequate assistance, and exercised reasonable professional judgment
6  in making decisions. See id. at 690. "[A] fair assessment of attorney performance requires
7  that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the
8  circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's
9  perspective at the time." Bonin v. Calderon, 59 F.3d 815, 833 (9th Cir. 1995) (quoting
10 Strickland, 466 U.S. at 689). Moreover, review of counsel's performance under Strickland
11 is "extremely limited": "The test has nothing to do with what the best lawyers would have
12 done. Nor is the test even what most good lawyers would have done. We ask only whether
13 some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel
14 acted at trial." Coleman v. Calderon, 150 F.3d 1105, 1113 (9th Cir.), judgment rev'd on other
15 grounds, 525 U.S. 141 (1998). Thus, a court "must judge the reasonableness of counsel's
16 challenged conduct on the facts of the particular case, viewed as of the time of counsel's
17 conduct." Strickland, 466 U.S. at 690.

18 If the prisoner is able to satisfy the performance prong, he must also establish
19 prejudice. See id. at 691-92; see also Smith v. Robbins, 528 U.S. 259, 285 (2000) (burden
20 is on defendant to show prejudice). To establish prejudice, a prisoner must demonstrate a
21 "reasonable probability that, but for counsel's unprofessional errors, the result of the
22 proceeding would have been different." Strickland, 466 U.S. at 694. A "reasonable
23 probability" is "a probability sufficient to undermine confidence in the outcome." Id. A court
24 need not determine whether counsel's performance was deficient before examining whether
25 prejudice resulted from the alleged deficiencies. See Robbins, 528 U.S. at 286 n.14. "If it is
26 easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice,
27 which we expect will often be so, that course should be followed." Id. (quoting Strickland,
28 466 U.S. at 697).

1    In reviewing a state court's resolution of an ineffective assistance of counsel claim,
2    the Court considers whether the state court applied Strickland unreasonably:

> For [a petitioner] to succeed [on an ineffective assistance of counsel claim], ... he must do more than show that he would have satisfied Strickland's test if his claim were being analyzed in the first instance, because under § 2254(d)(1), it is not enough to convince a federal habeas court that, in its independent judgment, the state-court decision applied Strickland incorrectly. Rather, he must show that the [state court] applied Strickland to the facts of his case in an objectively unreasonable manner.

Bell v. Cone, 535 U.S. 685, 698-99 (2002) (citations omitted); see also Woodford v. Visciotti, 537 U.S. 19, 24-25 (2002) ("Under § 2254(d)'s 'unreasonable application' clause, a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the state-court decision applied Strickland incorrectly. Rather, it is the habeas applicant's burden to show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner.") (citations omitted).

In denying Petitioner's petition for post-conviction relief, the trial court adopted the reasons set forth in the State's written response and summarily dismissed the PCR petition pursuant to Ariz.R.Crim.P. 32.6(c). (Exh. H.) In its response to Petitioner's PCR petition, the State argued that defense counsel's choice not to request the lesser-included jury instruction was a decision related to trial strategy. (Exh. G.) Specifically, the jury did not have the lesser-included charge before them on which to convict Petitioner. (Id.) Thus, based on Petitioner's theory of the case and the evidence presented, he would have been entitled to an acquittal since the evidence, he argued, did not support a conviction for the intentional crime with which Petitioner was charged. (Id.)

On May 2, 2012, the Arizona Court of Appeals denied Petitioner's petition for review. (Exh. J.) The court found that the trial court properly considered and rejected Petitioner's ineffective assistance claim regarding the failure to request a lesser-included instruction. (Exh. J.)

The Court finds that the state court's ruling was neither contrary to, nor an unreasonable application of federal law. Based on the testimony and evidence presented, Petitioner's theory of defense was that he did not intentionally or knowingly lock the victim

in the toy box, but rather, the victim accidentally locked herself inside the toy box while playing. And, although there was some testimony presented at trial suggesting that it was theoretically possible that noise the victim made while locked inside the toy box could have been heard within the residence, Petitioner never claimed, as a defense, and there was no evidence suggesting that he heard the screams but merely chose to ignore them. Thus, defense counsel's strategic decision to not request a lesser-included offense instruction suggests a reasoned choice to pursue an "all-or-nothing" defense. Based on the evidence presented, defense counsel's choice to pursue the "all-or-nothing" defense was a reasonable trial tactic, leaving the jury with only two options, outright acquittal or conviction of the most serious offense, thereby, eliminating the possibility that the jury might compromise by convicting Petitioner of a lesser-included offense. See Bashor v. Risley, 730 F.2d 1228, 1240-41 (9th Cir. 1984) (holding counsel's performance was sufficient even though he did not request a lesser-included offense instruction); Butcher v. Marquez, 758 F.2d 373, 376-77 (9th Cir. 1985) (decision to forgo lesser-included offense instruction reasonable if made to further trial strategy); Washington v. United States, 291 F.Supp.2d 418, 442 (W.D. Va. 2003) (holding that counsel's decision to forgo lesser-included instruction and instead pursue an all-or-nothing defense was a "a strategic decision to which the court accords considerable deference").

Additionally, counsel's decision to pursue an all-or-nothing defense was consistent with Petitioner's claim of innocence. Courts typically decline to find trial counsel ineffective for rejecting a strategy that is inconsistent with their client's assertion of innocence. See Butcher, 785 F.2d at 376-77 (upholding trial counsel's decision not to request lesser-included offense instruction that would have conflicted with defendant's alibi defense). The Ninth Circuit has held that counsel does not render ineffective assistance by declining to pursue a strategy that conflicts with the defendant's version of the events. See Williams v. Woodford, 306 F.3d 665, 709 (9th Cir. 2002) ("Given this factual support for the alibi defense, it was clearly within the wide range of professionally competent assistance for [defense counsel] to choose not to present a psychiatric defense theory that could conflict with the alibi

1 defense."), amended and superseded on other grounds, 384 F.3d 567 (9th Cir. 2004); Turk v.
2 White, 116 F.3d 1264, 1266-67 (9th Cir. 1997) (defense counsel was not ineffective for not
3 pursuing a diminished-capacity defense because it would have conflicted with the primary
4 defense of self-defense); Villafuerte v. Stewart, 111 F.3d 616, 630 (9th Cir. 1997) (counsel
5 properly declined to raise an intoxication defense because it would have contradicted defense
6 theory that someone else committed the crime).

7 Based on the foregoing, Petitioner's claim of ineffective assistance of counsel based
8 on counsel's failure to request a lesser-included instruction fails.

## CONCLUSION

10 Petitioner having withdrawn his claims asserted in Grounds One, Three, and Four of
11 his habeas petition, and the Court finding that Ground Two fails on the merits, the Court will
12 recommend that Petitioner's Petition for Writ of Habeas Corpus be denied and dismissed
13 with prejudice.

14 **IT IS THEREFORE RECOMMENDED** that Petitioner's Petition for Writ of
15 Habeas Corpus pursuant to 28 U.S.C. § 2254 (Doc. 1) be **DENIED** and **DISMISSED WITH**
16 **PREJUDICE**.

17 **IT IS FURTHER RECOMMENDED** that a Certificate of Appealability and leave
18 to proceed *in forma pauperis* on appeal be **DENIED** because Petitioner has not made a
19 substantial showing of the denial of a constitutional right.

20 This recommendation is not an order that is immediately appealable to the Ninth
21 Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of
22 Appellate Procedure, should not be filed until entry of the district court's judgment. The
23 parties shall have fourteen days from the date of service of a copy of this recommendation
24 within which to file specific written objections with the Court. See 28 U.S.C. § 636(b)(1);
25 Rules 72, 6(a), 6(b), Federal Rules of Civil Procedure. Thereafter, the parties have fourteen
26 days within which to file a response to the objections. Failure timely to file objections to the
27 Magistrate Judge's Report and Recommendation may result in the acceptance of the Report
28 and Recommendation by the district court without further review. See United States v.

Case 2:12-cv-01889-DJH   Document 24   Filed 01/10/14   Page 11 of 11

1  Reyna-Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003). Failure timely to file objections to any
2  factual determinations of the Magistrate Judge will be considered a waiver of a party's right
3  to appellate review of the findings of fact in an order or judgment entered pursuant to the
4  Magistrate Judge's recommendation. See Rule 72, Federal Rules of Civil Procedure.

DATED this 10th day of January, 2014.

*[signature]*

Michelle H. Burns
United States Magistrate Judge

- 11 -